# FLINT EMERGENCY MEDICINE LLC
# INDEPENDENT CONTRACTOR PHYSICIAN AGREEMENT

THIS AGREEMENT is made this 14th day of July, 2010, between Richard K. Chase, D.O., a duly licensed physician in the State of Georgia ("Physician"), and Flint Emergency Medicine LLC, a Louisiana Corporation ("Corporation").

WHEREAS, Corporation engages in the business of contracting with medical institutions to staff and to service the emergency and urgent medical care facilities of such medical institutions; and,

WHEREAS, Physician desires to contract his or her services as an independent contractor to Corporation, and Corporation desires to contract with Physician pursuant to the terms and conditions hereinafter set forth.

NOW, THEREFORE, for and in consideration of the mutual covenants, promises and payments as hereinafter set forth, Corporation and Physician agree as follows:

**1. Physician, an Independent Contractor.** No relationship of employer and employee is created by this agreement, it being understood that Physician will act hereunder as an independent contractor. Physician shall have no claim under this agreement or otherwise against Corporation for vacation pay, sick pay, retirement benefits, Social Security, Workers Compensation, disability, unemployment insurance benefits, or employee benefits of any kind. Corporation shall neither have nor exercise any control over the methods by which physician shall practice medicine and perform his work and functions; Physician does by this contract agree to perform his said work and functions at all times in strict accordance with currently approved methods and practices in the field of emergency medicine. Nothing in this agreement shall be construed to constitute Physician as an agent or employee of Hospital or Corporation nor shall anything contained herein be construed to constitute Hospital or Corporation as agent for Physician except as provided in Section 7.

**2. Physician Services.** The Physician shall render services as described herein, at the hospital ("Hospital") to which the Physician is assigned by the Corporation as follows:

    A. Physician shall meet and maintain board-certification or board-eligibility in specialty as required by Corporation and Hospital, and maintain current experience (within prior two years) as an emergency physician. Physician shall also maintain a valid, unrestricted, and unconditional license to practice medicine in good standing in the State of Georgia, maintain a current state and federal DEA certificate, and maintain Medical Staff membership and appropriate clinical privileges at Hospital.

    B. Physician shall provide professional medical services to all patients who seek treatment at Hospital's Emergency Department. In the event there are patients who require treatment in the Emergency Department at the end of a Scheduled Work Shift, as defined in Section 3 of this agreement, and Physician has not been relieved by another physician, Physician agrees to provide such professional medical services as may be required under the circumstances even though such services are performed during an unscheduled work period, and to remain on duty until replaced by another physician. During Scheduled Work Shifts, Physician will remain present within the Hospital, and shall ensure that all necessary medical services are promptly performed.

    C. Physician shall provide professional medical services to all patients presenting



FEM 003527

themselves in the Emergency Department for treatment without respect to race, color, or national origin, religion, sexual orientation or ability to pay, providing such patients desire treatment by Physician. After appropriate Emergency Department treatment, the patient shall be discharged, referred to another physician for follow-up care or be admitted to the hospital under the care of one of the physicians on the Hospital Medical Staff, in accordance with referral and admission policies of the Hospital.

D. Physician shall consult with members of the Hospital's Medical Staff when such consultation is in the best interest of the patient.

E. Physician shall ensure that all reports and records required by the Hospital are promptly and properly completed and maintained. If failure to complete these reports and records results in suspension of staff privileges, Physician's compensation check may be withheld until such records are completed.

F. Physician shall discharge his or her duties in accordance with the policies, rules and regulations of both Corporation and of the Hospital and its Medical Staff. Physician agrees not to distribute or implement any patient instruction sheets, consent forms, release forms, or other similar documents which have not been reviewed and approved by the Corporation. Physician agrees to dress in a manner acceptable to Corporation for providing patient care services in the Emergency Department, and to maintain a cooperative and positive relationship with the Hospital medical staff members and nursing and administrative staff.

G. Physician shall cooperate and participate with organized peer review and quality assessment/improvement activities as well as disaster planning of the Emergency Department, Corporation and Hospital.

H. Physician shall, at its own expense, maintain certification in Advanced Cardiac Life Support (ACLS), Advanced Trauma Life Support (ATLS) and Pediatric Advanced Life Support (PALS). If not certified at time of execution of this contract, Physician shall obtain certification in ACLS and PALS within six (6) months and ATLS within one year and shall maintain current certification and provide Company with copies of such.

**3. Schedule.** Physician shall perform the services described above on such dates and during such hours as shall be from time to time mutually agreed upon by Physician and Corporation. The hours Physician works shall be determined by Physician's availability which he or she shall provide on request of Corporation, at least thirty (30) days in advance. The periods so agreed upon shall be referred to as "Scheduled Work Shifts". Corporation shall make every effort to establish a fair distribution of Work Shifts for the physician staff, but once a Scheduled Work Shift has been agreed upon, Physician shall perform the services described above during that period unless he or she arranges for another qualified and privileged physician staff member to cover, or as otherwise agreed by the Corporation. The Corporation will, however, attempt in good faith to be flexible concerning desired schedule changes as work permits. Although it is the intention of Physician and the Corporation that Physician shall work only on dates and times acceptable to the Physician, Physician agrees to attempt in good faith to be reasonably available on a regular basis to meet the scheduling needs of the Corporation, including occasional scheduling on short notice or on undesirable dates or times if needed by the Corporation on an extraordinary basis and if Physician is otherwise available. Physician and Corporation agree that service schedules will be generally fixed at least thirty (30) days in advance. Physician agrees to give the Corporation not less than four (4) weeks notice of anticipated unavailability for service for an extended period of time or anticipated unavailability for service on regularly scheduled days or times. Physician may, at his or her option, provide

- 2 -

FEM 003528

another Physician to perform his or her scheduled services provided that Physician shall notify Corporation of the person designated at least twenty-four hours prior to the time scheduled for the performance of such services and also provided that substitute Physician is qualified and privileged by the Hospital Medical Staff to perform such services.

**4. Term.** This Agreement will continue in effect for one year from its effective date of July 14, 2010, and will be automatically renewed for additional one year terms until terminated as provided herein.

**5. Compensation.** Corporation shall compensate Physician in the manner set forth in Schedule 1 to this Agreement. The Corporation will provide no less than thirty (30) days written notice to Physician of any change in rates. The Compensation herein described shall be the sole and exclusive compensation paid to the Physician. The Corporation shall have no liability for any expenses or other charges incurred by the Physician in performance of duties under this Agreement.

**6. Professional Liability (Malpractice) Insurance.** Corporation shall provide a professional liability insurance policy, including any applicable extended reporting period coverage, with minimum liability limits of $1,000,000 per occurrence and $3,000,000 in the aggregate as established by the Corporation and required by the Hospital. The Corporation shall pay the actual cost of Physician coverage. Newly contracted physicians who have not worked for Corporation prior to December 1, 2005 also agree to request his or her prior professional liability carrier to provide copy of his/her prior insurance certificate, prior claims history, and evidence of tail coverage prior to joining the emergency staff of Corporation.

If a physician chooses to maintain his/her personal professional liability insurance policy, Corporation and Physician shall establish a separate agreement to assure both Corporation and Hospital are indemnified, to require carrier to notify Corporation immediately of any changes in terms, reported intents to sue or lawsuits filed, notice of cancellation of the policy, and provide copies of renewal certificates to Corporation.

Physicians are required to notify Corporation in writing within five (5) business days: if

**6.1** Physician is serviced with or receives a copy of a complaint that has been or may be filed in any court or with any arbitrator or arbitration service, receives a demand for compensation or other corrective action, or otherwise receives information about a potential claim by or on behalf of a patient or other private person arising from Physician's practice of medicine;

**6.2** Physician is notified that he/she has become the subject of an investigation or disciplinary proceeding by the Georgia Board of Medical Examiners, or the subject of any audit, investigation, disciplinary proceeding, sanction, or similar action by any hospital, professional organization, third-party payer, or governmental body;

**6.3** Physician's license to practice medicine, or federal or state DEA certification is suspended, revoked, terminated, or not renewed, or an order for such an action is stayed conditioned on fulfillment of certain obligations; or

**6.4** An event occurs that substantially interrupts all or a portion of Physician's professional practice or that materially adversely affects Physician's ability to carry out Physician's duties hereunder.

- 3 -

FEM 003529

**7. Limited Power of Attorney.** Physician designates Corporation or its designated individual or agent as his or her true and lawful attorney, in his or her name, place and stead, and hereby authorizes the aforesaid to make and sign all documents pertaining to patient billing, including all insurance claim forms for all third party payors, and to receive payment from all payors on his or her behalf, and to deposit in its account(s) all cash receipts pertaining to services provided by me for services rendered for Corporation. Physician also agrees that if any checks are mailed to him or her directly for services performed for Corporation, that such checks or payments shall be mailed to the then current office of the Corporation, properly endorsed for deposit by Corporation. Physician further authorizes the Corporation to request and exercise all procedural and substantive rights which Physician would otherwise have, were Physician to act in person pursuant to the above-mentioned documents. In furtherance of, and without limiting the foregoing, Physician authorizes the Corporation to take any and all steps necessary to carry out the foregoing powers. Physician agrees that the terms of this paragraph are irrevocable and survive the termination of this agreement, or Physician's death or incompetency.

**8. Indemnification.** Physician shall be responsible for the quality of care rendered to patients, and Physician covenants and agrees to indemnify Hospital and Corporation or any affiliate or subsidiary of Corporation for which Physician performs services under this Agreement, and its officers, directors, and employees against any and all loss, expense, costs, damage or liability whatsoever, including attorneys' fees arising out of Physician's actions or omissions, including any arising out of Physician's performance of or failure to perform professional medical services under this Agreement. Physician's indemnification obligation under this paragraph shall survive termination of this Agreement. In event of recovery by a patient against Corporation for negligence of Physician in whole or in part, Physician further agrees to pay to indemnify and hold Corporation completely free and harmless from any accounts recovered by patient from said Hospital. Physician agrees to indemnify and hold harmless Corporation and reimburse it for any and all damages or costs resulting from the Physician's discrimination or harassment of any Hospital or Corporation employee on the basis of race, national origin, religion, sex, age, disability, veteran or other protected status where qualified.

**9. Independent Contractor.** Physician acknowledges that he or she is an Independent contractor and not an employee or agent of Corporation, and is not entitled to any employee benefits whatsoever either by the Corporation or by the medical institution wherein Physician is providing services. Physician agrees that, as an independent contractor, he or she is fully and completely responsible for payment of all appropriate self-employment tax payments, as well as social security and any other required tax payments. Corporation shall provide Physician a 1099 form as required by law, showing all payments to Physician.

**10. Other Professional Activities.** It is expressly acknowledged and agreed that Physician may engage in any other professional activities or business during the term of this Agreement so long as such activities are not inconsistent with and do not conflict with Physician's contractual obligations hereunder or terms of Corporation's Emergency Services Agreement with the Hospital where Physician provides services.

**11. Assignment.** This Agreement is not assignable by either party without prior written consent of both parties.

**12. Covenant**. Physician agrees that during the term or renewal terms of this

- 4 -

FEM 003530

Agreement with Corporation and for one year after termination of this Agreement not to interfere with the contractual relationship between Corporation and any hospital where Corporation has assigned Physician to provide services under this Agreement. Further, should Physician's Agreement be terminated, howsoever the same may be terminated, Physician shall not directly or indirectly solicit a contract to perform Emergency or Urgent Care Services at any hospital where Corporation still provides services where Physician formerly provided services for Corporation. Breach of this Agreement may result in legal action to be taken by Corporation against Physician.

**13. Medical Staff Privileges.** Physician shall apply for Medical Staff appointment and clinical privileges at the medical institution(s) to which Physician is scheduled to provide services under this Agreement, and approval for Physician to provide these services is contingent upon obtaining approval of such appointment and privileges. Such application shall be made in accordance with the Medical Staff Bylaws of the institution and the institution's Medical Staff.

**14. Termination of Staff Membership.** Physician shall become a member of the Medical Staff of Hospital solely for the purpose of providing services as contemplated by this Agreement. Physician shall remain a member of Hospital's Medical Staff only for so long as this Agreement remains in effect (*i.e.* until termination or expiration of this Agreement). Upon expiration or termination of this Agreement, Physician's Medical Staff membership and clinical privileges automatically terminate and Physician shall have the right to a hearing and/or appeal as provided in the Medical Staff Bylaws.

**15. Termination.** This Agreement may be terminated "without cause" by either party on sixty (60) days written notice to the other party. This Agreement may also be terminated immediately, on breach of the Agreement, by either party on written notice.

This Agreement may also be terminated by Corporation for cause at any time or for any of the following reasons:

1. The Physician's use of drugs, alcohol or mood altering substances, as determined by Corporation or by Hospital's Medical Review Officer, which interferes with the performance of the Physician's duties and responsibilities under this Agreement;
2. The Physician's conviction of, or entry of the plea guilty or nolo contendere (or equivalent plea) of a felony crime;
3. The Physician's failure to maintain the confidentiality of the terms of this Agreement under Section 17;
4. The Hospital's or Corporation's determination that Physician adversely affects the quality of patient care delivered in the Emergency Department;
5. Evidence of a significant violation, or repeated violations, of Hospital's or Corporation's policies and procedures;
6. Physician brings disrepute upon the Hospital or Corporation which is likely to impact Hospital's operations negatively;
7. Physician's conviction of any crime involving moral turpitude or immoral conduct;
8. A significant violation of a Hospital policy or procedure, or repeated violations of Hospital policies and procedures; and
9. Any material breach of any of the provisions of this Agreement.

The Physician also understands and agrees that because Flint Emergency Medicine LLC holds exclusive emergency services agreements wherever it provides emergency services, that unless otherwise agreed by Flint River Hospital, or other hospitals where Physician works for Corporation, that any and all emergency medicine privileges granted to Physician by Flint River

FEM 003531

Hospital, or other hospitals where Corporation has scheduled Physician to work, are hereby relinquished and terminated simultaneous with the date of termination of either this Agreement and/or termination of Flint Emergency Medicine LLC's Emergency Services Agreement with Flint River Hospital or other hospital where Physician works.

**16. Completion of Documents.** Physician shall complete in a timely and appropriate manner all applications, forms or records necessary to permit the appropriate entity to bill for and receive reimbursement for Physician's medical services from third-party payors. Physician agrees to cooperate with Corporation in maintaining and providing customary medical, financial, administrative and other records as may be needed by Corporation or as required and/or allowed by law.

**17. Other Provisions.** Physician agrees to refrain from using or disclosing the Confidential Information of the Corporation or Hospital. For purposes of this Agreement, "Confidential Information" means all information about the Corporation or its patients, whether oral or written, in any form or medium, pertaining to the following subjects: existing or prospective contractual relationships, financial information, including revenues, expenses, assets, debts, or any other type of financial information; referral relationships; business plans and internal operations; governance; individual patients, including but not limited to names, addresses, third-party payor information, medical information and information otherwise reasonably designated as confidential by the Corporation. Confidential Information expressly includes all terms of this Agreement.

Physician also agrees to comply with requirements of the Health Insurance Portability and Accountability Act ("HIPAA") of 1996 for confidentiality of patient information as may be required by Hospital(s) served by Corporation.

Physician also represents to Corporation that neither Physician nor any member of Physician's immediately family is employed by or has a financial relationship with any Hospital or with any other provider of designated health services, as that term is defined in 42 U.S.C @ 1395nn (commonly known as the "Stark" law).

**18. Disputes.** In case of any dispute arising under this Agreement which cannot be settled by reasonable discussion, Physician agrees that such unresolved dispute shall be submitted to a binding arbitration process through a local arbitration service selected by Corporation but agreed upon by the Parties. Each party shall bear one-half (1/2) of the arbitration mediator's fees and expenses, and shall pay its own attorneys' fees and expenses related to arbitration.

**19. Severability Clause.** In the event any term or portion of this Agreement is found to be unenforceable or void either in whole or in part, then the offending term shall be construed as valid and enforceable to the extent permitted by law and the balance of the Agreement will remain in force and effect.

**20. Governing Law.** This Agreement shall be governed by the laws of the State of Louisiana.

**21. Notices.** All notices, payments, and other communications required or permitted under this Agreement shall be deemed given and received when delivered in person, deposited in the United States mail, postage prepaid, certified, and addressed to Corporation to the attention of the Frederick K. Yates, MD, P.O. Box 6773, Shreveport, LA 71136-6773, or Terri L

FEM 003532

Serwacki, 122 Carlyle Avenue, Belleville, Illinois 62220 or such other address as Corporation may direct in writing, and in the case of the Physician, to the last known address provided by Physician in Corporation's files. The parties agree to notify each other immediately of any change of address.

**22. Access to Records.** Until the expiration of four (4) years after the furnishing of services pursuant to this Agreement, Physician shall make available, upon written request, to the Secretary of Health and Human Services or any duly authorized representatives, this Agreement and books, documents and records of such Physician that are necessary to certify the nature and extent of costs incurred with respect to any services furnished for which payments may be made under the Medicare or Medicaid programs.

**23. Waiver.** The waiver of either party of a breach or violation of any provisions of Agreement shall not operate as or be construed to be a waiver of any such parties' rights with respect to any subsequent breach thereof.

**24. Entire Agreement; Amendment.** This Agreement is the complete agreement of the parties and the parties agree that no warranties, inducements, or representations exist except as stated within this Agreement. This Agreement may be amended only by a written instrument signed by Corporation and the Physician.

**THE TERMS OF THIS AGREEMENT** being acceptable both to **Physician** and Flint Emergency Medicine LLC, the parties have executed this Agreement as of the day and date first above stated.

**PHYSICIAN:**

_____   5 6 2011
(By: Richard K. Chase, D.O.)               Date

**Flint Emergency Medicine LLC:**

_____   7-2-2011
(By: Frederick K. Yates, M.D., Corporate Medical Director)   Date

FEM 003533

## SCHEDULE 1

**Compensation:**     **Main Emergency Department:**
  **$90.00** per hour based on written scheduled hours at Flint River Hospital.
  **$500.00** per month as a collaborating physician for Nurse Practitioners working in the ER

All compensation shall be postmarked by the fifteenth (15th) day of each month for hours worked the previous month. Should the 15th fall on a weekend or a holiday, posting shall normally be on the next weekday.

Dr. Chase is a collaborating physician for the Nurse Practitioners working in the ER.

SIGNATURE: _____    Date: 5 b 2011
Richard K. Chase, D.O.

- 8 -

FEM 003534